NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| ZOILO A. VENTURA | : | |
| | : | Civil Action No.  08-5792 (SRC) |
| Plaintiff, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| MONTCLAIR STATE UNIVERSITY, et al, | : | |
| | : | |
| | : | |
| | : | |
| Defendants. | : | |
| | : | |

**CHESLER, U.S.D.J.**

This matter comes before the Court on the motion for summary judgment filed by Defendants Montclair State University ("MSU"), John Vitiello, Joseph Marzullo, Walter Watkins, Dr. Timothy Carey, Walter Eddy, Theresa Geordino, Keesha Chavis, Joseph Fornarotto, Evrin Aya, and Robert Caputo (collectively "Defendants") [docket item no. 75]. Plaintiff has opposed the motion [docket item no. 85].  The Court has opted to rule based on the papers submitted and without oral argument, pursuant to Federal Rule of Civil Procedure 78.  For the reasons expressed below, the Court will grant in part and deny in part the Defendants' motion.

I.    BACKGROUND

As set forth in the Court's prior Opinion in this matter, dated February 9, 2011, this case arises from an employment dispute.  Plaintiff, Zoilo Ventura is a 58-year-old Hispanic male who has worked as a Senior Repairer at MSU.  Mr. Ventura sought, and was denied, several

promotions during his time at MSU.  Plaintiff's Complaint alleges that such denials were based

on age and race/national origin discrimination.  Plaintiff further alleges that he has faced

discriminatory harassment in the workplace, and that after filing complaints about the

discrimination, he faced retaliation from his coworkers.

Defendants previously filed a motion for summary judgment on Plaintiff's claims, which

the Court granted in part and denied in part.  Specifically, the Court denied Defendants' motion

as to Plaintiff's claims arising under 42 U.S.C. § 1983, and the Age Discrimination in

Employment Act ("ADEA"), 29 U.S.C. § 630(b), rejecting Defendant MSU's assertion of

immunity under the Eleventh Amendment to the United States Constitution.  As to Plaintiff's

claims arising under Title VII of the Civil Rights Act of 1964, as amended in 1991, 42 U.S.C. §

2000e *et seq.*, the Court granted Defendants' motion for summary judgment with respect to the

alleged failure to promote Plaintiff in 2005, Plaintiff having failed to timely exhaust his

administrative remedies, and with respect to Plaintiff's hostile work environment claim, which

was not within the scope of the Equal Employment Opportunity Commission ("EEOC")  charge.[1]

However, in light of evidentiary deficiencies, the Court concluded that there was a contested

issue of material fact regarding MSU's alleged discriminatory failure to promote Plaintiff in July

of 2007.  The Court also denied Defendants' motion for summary judgment as to Plaintiff's

related retaliation claim.

As to Plaintiff's state law claims, the Court denied Defendants' motion for summary

judgment on the alleged violations of New Jersey's Law Against Discrimination (N.J.S.A 10:5-1

---

[1]The Court also granted Defendants' motion for summary judgment on Plaintiff's Title VII claims to the extent that he asserted them against the individual employees of MSU named as Defendants in this matter, citing *Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061, 1078 (3d Cir. 1996).

*et seq.*) ("NJLAD"), for essentially the same reasons that it denied Defendants' motion to dismiss Plaintiff's federal discrimination claims.  The Court did, however, grant summary judgment in favor of Defendants as to Plaintiff's breach of contract claim, and his intentional infliction of emotional distress claim. Finally, the Court denied Defendants' motion for summary judgment on Plaintiff's punitive damages claim, since the fact-intensive inquiry required for such a determination precludes judgment as a matter of law.

Having developed a fuller evidentiary record, Defendants now renew their motion for summary judgment.  First, Defendants argue that Plaintiff's Titile VII discrimination claim regarding the July, 2007 non-promotion should be dismissed, because Plaintiff was at the time ineligible for the position, and because MSU chose the candidate that scored the highest on the promotional examination.  Second, Defendants argue that Plaintiff's Section 1983 claim should be dismissed because that section provides no cause of action against a State or its officials acting in their official capacities.  Third, Defendants argue that Plaintiff's ADEA claims should be dismissed because they are time-barred as to the carpenter positions available in May 2005 and October of 2005, and because Plaintiff was not qualified for the July 2007 position. Defendants seek summary judgment on Plaintiff's NJLAD discriminatory non-promotion claims on the same basis.  Fifth, Defendants seeks summary judgment on Plaintiff's NJLAD hostile work environment claim because Plaintiff was not present for harassment based on race.  Finally, Defendants argue that Plaintiff's retaliation claims under both Title VII and NJLAD should be dismissed as a matter of law because he cannot show that Defendants were aware of his protected conduct, that the retaliatory incidents alleged were materially adverse, or that they were causally connected to the alleged retaliation.

II.    **DISCUSSION**

**A.  Standard of Review**

Federal Rule of Civil Procedure 56(c) provides that summary judgment should be granted

"if the pleadings, depositions, answers to interrogatories, and admissions on file, together with

the affidavits, if any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see also*

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kreschollek v. S. Stevedoring Co.*,

223 F.3d 202, 204 (3d Cir. 2000).  In deciding a motion for summary judgment, a court must

construe all facts and inferences in the light most favorable to the non-moving party.  *See Boyle*

*v. Cnty. Allegheny Pa.*, 139 F.3d 386, 393 (3d Cir. 1998).  The moving party bears the burden of

establishing that no genuine issue of material fact remains.  *See Celotex Corp. v. Catrett*, 477

U.S. 317, 322-23 (1986).  Where, as here, the nonmovant (plaintiff) would bear the burden of

persuasion at trial, "the party moving for summary judgment may meet its burden of proof by

showing that the evidentiary record, if reduced to admissible evidence, would be insufficient to

carry the nonmovant's burden at trial."  *Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893, 896 [43

Fair Empl. Prac. Cas. (BNA) 681] (3d Cir.), *cert. dismissed*, 483 U.S. 1052 (1987).

Once the moving party has properly supported its showing of no triable issue of fact and

of an entitlement to judgment as a matter of law, the non-moving party "must do more than

simply show that there is some metaphysical doubt as to material facts."  *Matsushita*, 475 U.S. at

586; *see also Anderson*, 477 U.S. at 247-48.  Pursuant to Federal Rule of Civil Procedure 56(e),

the non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the

'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts

showing that there is a genuine issue for trial.'"  *Celotex*, 477 U.S. at 324; *Big Apple BMW, Inc.*

*v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992) ("to raise a genuine issue of material

fact . . . the [non-moving party] need not match, item for item, each piece of evidence proffered

by the movant," but rather "must exceed the 'mere scintilla' threshold"), *cert. denied*, 507 U.S.

912 (1993)).

### B.  Title VII Failure to Promote Claim

Plaintiff's allegation that his employer did not promote him to the carpenter position in

July of 2007 because of his membership in a protected class is a disparate treatment claim.  Such

discrimination claims are, under federal law, analyzed through the application of the *McDonnell*

*Douglas* test:

> The Court in *McDonnell Douglas* set forth a burden-shifting scheme for
> discriminatory-treatment cases.  Under *McDonnell Douglas*, a plaintiff must first
> establish a prima facie case of discrimination. The burden then shifts to the
> employer to articulate a legitimate, nondiscriminatory reason for its employment
> action.  If the employer meets this burden, the presumption of intentional
> discrimination disappears, but the plaintiff can still prove disparate treatment by,
> for instance, offering evidence demonstrating that the employer's explanation is
> pretextual.  The Courts of Appeals have consistently utilized this burden-shifting
> approach when reviewing motions for summary judgment in disparate-treatment
> cases.

*Raytheon Co. v. Hernandez*, 540 U.S. 44, 50 (2003) (citations omitted).

If the plaintiff succeeds in establishing a prima facie case, the burden shifts to the

defendant to "articulate some legitimate, non-discriminatory reason" for the employer's action.

*McDonnell Douglas*, 411 U.S. 792, 802 (1973).  The employer may satisfy the burden by

introducing evidence which, taken as true, would allow the factfinder to conclude that there was

a nondiscriminatory reason for the unfavorable employment decision.  *St. Mary's Honor Ctr. v.*

*Hicks*, 509 U.S. 502 (1993).  The employer need not prove that the tendered reason actually

motivated the decision.  *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).  The

burden of proving intent remains with the Plaintiff.  *Id.*

If the defendant employer satisfies the burden, then "the plaintiff generally must submit evidence which: 1) casts sufficient doubt upon each of the legitimate reasons proffered by the defendant so that a factfinder could reasonably conclude that each reason was a fabrication; or 2) allows the factfinder to infer that discrimination was more likely then not a motivating or determinative cause of the adverse employment action." *Fuentes v. Perskie*, 32 F.3d 759, 762 (3d Cir. 1994).

The case law makes clear that, as to demonstrating pretext, "this standard places a difficult burden on the plaintiff."  *Id.* at 765.

> Although intermediate evidentiary burdens shift back and forth under this framework, the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.

*Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 143 (2000) (quotation omitted).  Moreover:

> [T]he factfinder's rejection of the employer's legitimate, nondiscriminatory reason for its action does not compel judgment for the plaintiff.  The ultimate question is whether the employer intentionally discriminated, and proof that "the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason . . . is correct."  In other words, "it is not enough . . . to disbelieve the employer; the factfinder must believe the plaintiff's explanation of intentional discrimination."

*Id.* at 146-147 (quoting *St. Mary's*, 509 U.S. at 519, 524).

In this case, Plaintiff has the burden to make out a prima facie case that (1) he is a member of a protected class, (2) he was qualified for the July, 2007 carpenter position, (3) he applied for and was rejected from the position, and (4) non-members of the protected class were treated more favorably.  *See Blue v. Def. Logistics Agency*, 181 F. App'x 272, 273 (3d Cir. 2006).  Neither party disputes that Mr. Ventura is a member of a protected class.  However, Defendants

maintain that Plaintiff cannot make out the second prong of his prima facie case, because he was not qualified for promotion in July of 2007.  Specifically, according to the applicable provisions of the New Jersey Administrative Code, an individual who is serving a four-month working test period is ineligible for a promotion from that title.  *See* § 4A:5-1(d).  Defendants claim that Plaintiff was ineligible for the July 2007 carpenter position because he was serving a four-month test period for the Special Repairer position at the time, having been State-certified for same as of June 18, 2007.  Plaintiff claims that he had already served a four-month working test period in early 2006, and was certified in both March of 2006, and April of 2007, and thus was eligible for the position.  The Court previously found that there was a material dispute on this issue, because documents submitted by both sides failed to provide the Court with a clear picture of the critical events.

Plaintiff was working at MSU as a repairer when, in November of 2005, he was provisionally promoted to a Facilities Coordinator position, with the title of "Senior Repairer," in connection with the Building Steward program.  By letter dated January 17, 2006,[2] providing Plaintiff with details on his promotion, and the accompanying salary increase, Defendants notified Plaintiff that, in order to achieve permanent status in this title, he would be required to successfully complete New Jersey's State civil service requirements, including a working test-period of fourth months.  (McGarvey Cert., Ex. E.)  Plaintiff was also notified that, pursuant to Department of Personnel regulations, he must pass the State examination, and be certified for the position to which he was promoted (Senior Repairer), *prior* to the commencement of the working

---

[2]It appears that Plaintiff signed and dated this notification letter on May 3, 2006, though Plaintiff alleges that he was not given a copy of same.  (McGarvey Cert., Ex. E.)

test period.[3]  The rationale for this requirement is that, when an individual is provisionally

promoted to a competitive position, he or she must earn permanence in that position (through

certification, and a subsequent working test period) in order to become eligible for further

promotion.[4]  Defendants provide MSU administrative records and correspondence clearly

showing that Plaintiff was not certified for the position of Senior Repairer until June 18, 2007,

that he completed his four-month working test thereafter – from mid-July to mid-November of

2007[5] –  and that he was therefore ineligible for promotion pursuant to the applicable regulations

at the time that he applied for the July 2007 carpenter position.  (McGarvey Cert., Exs. J-M.[6])

Plaintiff claims that he was never accurately notified of either the certification

requirement or the subsequent working test period requirement, and that various MSU personnel

gave him conflicting information regarding his eligibility for the July, 2007 carpenter position.

However, administrative records indicate that, at least as early as May 3, 2006, Mr. Ventura was

formally advised of these requirements.  Indeed, Plaintiff appears to have passed the requisite

---

[3]N.J.S.A. 4A:4-5.2(a) provides that "[t]he working test period shall not include any time served by an employee under provisional, temporary, interim or emergency appointment.  The working test period shall begin on the date of regular appointment."  N.J.S.A. 4A:1-1 defines regular appointment as "the employment of a person to fill a position in the competitive division of the career services *upon examination and certification* . . ." (emphasis added).

[4]Indeed, the regulations make clear that the working test period shall not include any time served by an employee under provisional appointment.  N.J.S.A § 4A:4-5.2(a).

[5]There is a discrepancy as to whether Plaintiff was permanent as of mid-October or mid-November, 2007, but in either case, he could not have completed his work testing period, and achieved permanent employee status as of the July, 2007 carpenter opening.

[6]These Exhibits contain, *inter alia*, a Certification from the State of New Jersey listing individuals eligible for appointment to the title of Senior Repairer, including Plaintiff, whose appointment date is listed as June 18, 2007, together with a record from the Department of Personnel confirming this certification date; and Working Test Period Reports for several individuals, including Plaintiff, who signed the Reports, indicating that he satisfactorily completed the four-month testing period for Senior Repairer as of November 16, 2007.

State examination in or around August 8, 2006, and the letter to him from the Department of Personnel states that his passing the exam, and his resulting *eligibility* for State certification is not a guarantee of certification, and provides a link to the website containing certification procedures. (Pl.'s Br., Ex. C.[7])

    The one notable discrepancy in the evidence provided by the parties constitutes the record of a Working Test Period Report from May 7, 2006, which on its face appears to indicate that Plaintiff completed his test-period for the position of Senior Repairer on that date. (McGarvey Cert., Ex. F; Pl's Br., Exs. A, B.) Timothy Carey, the Assistant Vice President for Facilities Services at MSU, explains that the Division of Facilities used the same forms (i.e., the Working Test Period Report forms) that the Division of Human Resources uses to monitor the progress of the five individuals who had been promoted through the Building Stewards program at MSU. (Carey Cert., ¶¶ 5-6.) So, according to Mr. Carey, the report indicates that Plaintiff's supervisors in the Facilities Division believed he had made satisfactory progress in the position, but do not indicate that he had satisfied the Department of Personnel regulatory requirement of a four-month working test period following certification. It is regrettable that MSU gave Plaintiff reason to believe, through documents such as this one, and through the verbal communications cited by Plaintiff,[8] that he was in fact eligible for the 2007 carpenter position. Indeed, MSU is hardly to be applauded for its employer-employee relations in this case. However, New Jersey's

---

    [7]The same is true of the April 18, 2007 Certificate of Eligibility appended in this Exhibit; while it indicates that Plaintiff passed the Department of Personnel examination for Carpenter, the document states that "eligibility on this list is not a guarantee" of certification, interview or appointment.

    [8]For instance, Plaintiff alleges that he was in fact interviewed for the Carpenter position in July of 2007, and that individuals in the Human Resources office repeatedly failed to advise him that he was ineligible for promotion to the carpenter position because of certification or working test period requirements.

Department of Personnel regulations clearly required Plaintiff to be State-certified as a Senior

Repairer, and to serve a four-month working test period thereafter, which Plaintiff completed, at

the earliest, in mid-October of 2007.  Thus, viewing the evidence in the light most favorable to

the Plaintiff, he nevertheless fails to show that he was qualified for the July, 2007 carpenter

position, and there is no contested issue of material fact on this issue, entitling Defendant MSU

to judgment as a matter of law.  *See Blue*, 181 F. App'x at 273.  Because Plaintiff has not made a

prima facie case of discriminatory non-promotion, the Court need not reach Defendants' further

argument that MSU had a legitimate, non-discriminatory basis for selecting another candidate for

promotion.

### C.  Section 1983 Claim

Defendants seek summary judgment on Plaintiff's Section 1983 claim that Defendants

discriminated against him in violation of the Equal Protection clause of the Fourteenth

Amendment to the United States Constitution.  Defendants argue that neither MSU, nor its

employees may be sued under Section 1983 because that statute provides a cause of action only

against persons, and not against the State agencies or officials acting in their official capacities.

Section 1983 provides, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of
> any State or Territory or the District of Columbia, subjects, or causes to be subjected, any
> citizen of the United States or other person within the jurisdiction thereof to the
> deprivation of any rights privileges or immunities secured by the Constitution and laws,
> shall be liable to the party injured in an action at law, suit in equity, or other proper
> proceeding for redress.

The defendant in a § 1983 action, to be liable within the meaning of the statute, must be a

"person."  A State is not a "person."  *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 70-71

(1989).  Likewise, state agencies, and state officials sued in their official capacities are not

persons within the meaning of § 1983. *Id.* at 71 (holding that a suit against a state official in his or her official capacity is not a suit against the official, but a suit against the official's office, and is thus "no different than a suit against the State itself.").

Here, Defendants argue that Section 1983 provides Plaintiff with no cause of action against MSU, because it is an agency of the State of New Jersey. The Defendants are mistaken. As an initial matter, this Court, having conducted the applicable analysis under *Fitchik v. New Jersey Transit Rail Operations, Inc.*, 873 F.2d 655 (3d Cir. 1989), previously concluded that MSU is *not* an agency or arm of the State, and thus is not entitled to Eleventh Amendment immunity. Furthermore, in *Monell v. Department of Social Services of the City of New York*, the Supreme Court held that municipalities and other local government entities are "persons" within the meaning of Section 1983. 436 U.S. 658, 56 L. Ed. 2d 611, 98 S. Ct. 2018 (1978). Though the Third Circuit has not explicitly held that a university is analogous to a municipality or local government entity, and therefore a person within the meaning of Section 1983, Judge Debevoise reached this conclusion in *Kovats v. Rutgers*. 633 F. Supp. 1469, 1476 (D.N.J. 1986). Having found Rutgers University distinct from the State for Eleventh Amendment immunity purposes, he reasoned that there does not appear to be any analytical difference between a university, and the governing bodies considered "persons" pursuant to *Monell*. *Id.*; *see also Mauriello v. University of Medicine & Dentistry*, 781 F.2d 46 (3d Cir. N.J. 1986) (in which the Third Circuit entertained a Section 1983 action against University of Medicine and Dentistry of New Jersey). This Court has found MSU distinct from the State of New Jersey for Eleventh Amendment purposes, and likewise concludes that MSU is a person within the meaning of Section 1983.

Defendants further argue that, as to the private individuals named as Defendants, because the alleged discriminatory conduct occurred in the course of their official duties, Plaintiff must

sue them in their official capacities, and Section 1983 provides no cause of action for official-capacity suits.  The United States Supreme Court rejected this precise argument in *Hafer v. Melo*, holding that the better understanding of the distinction between official capacity suits, and personal- or individual-capacity suits lies in the *capacity in which a person is sued*, not the capacity in which the person inflicted the alleged injury.  502 U.S. 21, 27 (1993) (emphasis added).  The Court elaborated as follows:

> State officers sued for damages in their official capacity are not "persons" for purposes of the suit because they assume the identity of the government that employs them.  By contrast, officers sued in their personal capacity come to court as individuals.  A government official in the role of personal-capacity defendant thus fits comfortably within the statutory term "person."

*Id.*, at 27 (internal citations omitted).  Indeed, Section 1983 provides a cause of action against persons acting "under color of state law," in other words, against "wrongdoers who carry a badge of authority of a State and represent it in some capacity, whether they act in accordance with their authority or misuse it."  *Nat'l Collegiate Ath. Ass'n v. Tarkanian*, 488 U.S. 179, 191 (U.S. 1988) (quoting *Monroe v. Pape*, 365 U.S. 167, 172 (1961)); *see also United States v. Classic*, 313 U.S. 299, 326 (1941) ("Misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken 'under color of' state law.").  Thus, State officials may be held personally liable for actions taken in the course of their official duties.  *Hafer*, 502 U.S. at 25 ("[O]n the merits, to establish personal liability in a Section 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right.") (quoting *Kentucky v. Graham*, 473 U.S. 159, 167, 87 L. Ed. 2d 114, 105 S. Ct. 3099 (1985)).

Here, as an initial matter, Plaintiff's Complaint does not specify whether he seeks relief

from the Defendants in their official or individual capacities.  The Third Circuit instructs that District Courts should examine the complaint and the "course of proceedings" to determine whether a plaintiff has sued defendants in their individual capacities, official capacities, or both. *Moore v. Cuttre*, 2010 U.S. Dist. LEXIS 62390, * 6-7 (D.N.J. June 23, 2010) (citing *Melo v. Hafer*, 912 F.2d 628, 635 (3d Cir. 1990), aff'd, 502 U.S. 21 (1991)).  In construing the Complaint, the relevant factors inlcude whether the relevant State is named as a defendant, any immunity defenses raised by the defendants, and the nature of the relief sought by the Plaintiff. *Id.*  Defendants assert that, because Plaintiff seeks relief from Defendants for conduct committed in the course of their official duties, he therefore must bring suit against them in their official capacities.  The Court disagrees.  As elucidated above, whether the alleged wrongdoing occurred in the course of a Defendant's official duties is not relevant to the question of capacity; indeed, personal capacity suits under Section 1983 are intended to vindicate the rights of individuals who suffer constitutional violations at the hands of persons, including State employees, acting "under color of state law." *Tarkanian*, 488 U.S. at 191.  Moreover, Plaintiff's Complaint names MSU and various individual employees of MSU as Defendants– it does not name the State of New Jersey.  Finally, Plaintiff seeks a host of relief, including compensatory and punitive damages, indicating that he intended to sue Defendants in their individual capacities.  *See Gregory v. Chehi*, 843 F.2d 111, 119-20 (3d Cir. 1988).  The Court concludes that Plaintiff sues the named Defendants in their individual capacities, and that Section 1983 provides Plaintiff with a cause of action to challenge Defendants' alleged actions as unconstitutional.  *Hafer v. Melo*, 502 U.S. at 25.  Defendants raise no other argument in support of their motion for summary judgment on Plaintiff's Section 1983 claim, and thus the Court will deny the motion as to this claim.

### D.  ADEA Claims

Plaintiff alleges that he was discriminated against on the basis of his age, in violation of the ADEA, because Defendants failed to promote him to carpenter positions to which he applied in May and October of 2005, and July of 2007.  Defendants argue that the failure to promote in 2005 is time-barred, and that the Plaintiff was not qualified for the July 2007 carpenter position.

The ADEA contains administrative charge and notice provisions which are similar to Title VII, mandating that an administrative charge be filed within 300 days of the discriminatory event.  29 U.S.C. § 626(d).  Moreover, as with Title VII claims, a litigant asserting an ADEA claim must timely file the charge with the EEOC before he or she may bring suit on those claims in federal court.  *See Bihler v. Singer Co.*, 710 F.2d 96, 97 (3d Cir. 1983).  As set forth in the Court's previous Opinion, Plaintiff did not file a charge with the EEOC until January 29, 2008 (McGarvey Cert., Ex. D), well more than 300 days after the alleged unlawful conduct in 2005.  Plaintiff apparently concedes that, if the Court viewed the 2005 non-promotions as discrete instances of alleged discrimination, those claims would be time-barred.  Plaintiff instead counters that those claims are timely under a continuing violations theory.  *See, e.g., West v. Philadelphia Electric Co.*, 45 F.3d 744, 754 (3d Cir. 1995).  The Court has already rejected this theory in the analogous context of Plaintiff's Title VII claims.  The failure to promote Plaintiff on the basis of his age in May and October of 2005 are instances of alleged discrimination which also cannot not be resuscitated by the continuing violations doctrine.  *See Parikh v. UPS*, 2011 U.S. Dist. LEXIS 125548, at *10-11 (D.N.J. Oct. 31, 2011) (citing *AMTRAK v. Morgan*, 536 U.S. 101, 112, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002) ("Discrete discriminatory acts are not actionable if time-barred, even if they are related to actions filed in timely-filed charges.")); *see also Speth v. Goode*, 2011 U.S. Dist. LEXIS 5792, at *24-25 (D.N.J. Jan. 25, 2011) (holding that, in order to

constitute a continuing violation, discriminatory acts must be continuous on an almost daily

basis) (internal citations omitted).  Accordingly, Defendants' motion for summary judgment will

be granted as to Plaintiff's ADEA claims relating to the 2005 allegations.

Defendants argue that Plaintiff's ADEA claim for non-promotion in 2007 should also be

dismissed as a matter of law, because Plaintiff was not qualified for the position to which he

applied.  The ADEA provides that

> "it shall be unlawful for an employer . . . to fail or refuse to hire or to discharge any
>
> individual or otherwise discriminate against any individual with respect to his
>
> compensation, terms, conditions, or privileges of employment, because of such
>
> individual's age . . ."

29 U.S.C. § 623(a)(1).  The *McDonnell Douglas* burden-shifting framework utilized in disparate

treatment claims under Title VII is also applicable in the ADEA context.  In the Third Circuit, a

person generally can establish a prima facie case, thereby raising an inference of unlawful

discrimination, by demonstrating that (1) he was a member of the class protected by the ADEA,

(2) that he was qualified for the position for which he applied, (3) that the defendant denied his

application despite these qualifications, and (4) that the position was then filled by a person

sufficiently younger than the plaintiff to permit an inference of age discrimination.  *See, e.g.,*

*Siegel v. Alpha Wire Corp.*, 894 F.2d 50 at 52 [51 Fair Empl. Prac. Cas. (BNA) 1360] (3d Cir.

1990) (citing *Healy v. New York Life Ins. Co.*, 860 F.2d 1209, 1214 [48 Fair Empl. Prac. Cas.

(BNA) 459] (3d Cir. 1988), *cert. denied*, 490 U.S. 1098, 109 S. Ct. 2449 [49 Fair Empl. Prac.

Cas. (BNA) 1640, 104 L. Ed. 2d 1004] (1989)).  Thus, the second element of Plaintiff's prima

facie case for his ADEA claim is identical to the second element of Plaintiff's prima facie case

on his Title VII claim: his qualification for the relevant position.  The Court has already concluded that Plaintiff fails to show that he was qualified for the 2007 carpenter position, and that there is no contested issue of material fact on this issue; accordingly, the Court will grant summary judgment to Defendant MSU as to Plaintiff's ADEA claim regarding his non-promotion in July of 2007.[9]

### E.  NJLAD & Retaliation Claims

#### 1. Non-Promotion

The New Jersey Law Against Discrimination ("NJLAD") makes it unlawful to subject people to differential treatment based on, for example, race, creed, color, national origin, nationality, ancestry, age, sex, familial status, marital status, or domestic partnership status.  In order to establish a prima facie discriminatory non-promotion claim under the NJLAD, Ventura must demonstrate that he "(1) belongs to a protected class; (2) applied for or held a position for which [he] was objectively qualified; (3) was not promoted to ... that position; and... (4) the employer... filled the position with a similarly-qualified person."  *Middleman v. N.J. Transit*, 2010 WL 3932923, at *4 (N.J. App. Div. Sep. 28, 2010) quoting *Viscik v. Fowler Equip. Co.*, 173 N.J. 1, 14 (2002).  Once a prima facie claim has been established under the NJLAD the same burden shifting analysis formulated in *McDonnell Douglas* and outlined above in section II.B. applies.  *See id.*

Defendants argue that Plaintiff's claims of discriminatory non-promotion in May and October of 2005 are barred by the applicable statute of limitations.  Claims under the NJLAD are

---

[9]Defendants correctly argue that the ADEA does not impose liability upon individual employees, and thus a claim against Defendants other than MSU would, in any case, be dismissed.  *See Hill v. Borough of Kutztown*, 455 F.3d 225, 246 n.29 (3d Cir. 2006) (citations omitted).

subject to a two-year statute of limitations.  *Montells v. Haynes*, 133 N.J. 282, 291-93 (1993).

With respect to an employment discrimination claim relating to a discrete event such as

termination, suspension, denial of transfer, or denial of promotion, the claimant's cause of action

accrues on the date of the discriminatory event.  *See Shepherd v. Hunterdon Dev. Ctr.*, 174 N.J.

1, 19-21 (2002) (citing *AMTRAK*, 546 U.S. at 114).  Plaintiff's May, 2005 and October, 2005

non-promotion claims thus accrued on June 23, 2005, and March 22, 2006, respectively, when he

was notified that he did not receive the promotions.  (Compl.¶¶ 3, 5.)  Plaintiff had until June 23,

2007, to file suit regarding the first non-promotion, and until March 22, 2008 to file suit

regarding the second non-promotion.  Plaintiff did not file his complaint in federal court until

November 25, 2008, well after the expiration of the two-year statute of limitations as to both

claims.  Therefore, the Court shall grant Defendants' motion for summary judgment on

Plaintiff's NJLAD claims with respect to the 2005 non-promotions.

Defendants argue that Plaintiff's claim of discriminatory non-promotion in July of 2007

fails because Plaintiff was serving a four-month working test period at the time, and was not

qualified for the carpenter position to which he applied.  For the reasons set forth in above in

section II.B.1, the Court agrees, and will therefore grant Defendants' motion for summary

judgment as to Plaintiff's NJLAD claim of discriminatory non-promotion in July of 2007.

### 2. Hostile Work Environment under NJLAD

Defendants argue that Plaintiff's NJLAD claim against MSU for the creation of a hostile

work environment arising out of purported race-based or age-based discrimination[10] should be

dismissed because the conduct that MSU employees engaged in was not severe or pervasive.

---

[10]Since only one of the incidents in Plaintiff's harassment allegations relates to his age, the Court will discuss the standards governing Plaintiff's hostile work environment claim in the context of his race-based harassment allegations.

The New Jersey Supreme Court has interpreted N.J.S.A. § 10:5-12(a)[11] to encompass

hostile work-environment claims.  In order to establish a prima facie case of hostile work

environment due to discrimination, the plaintiff must show that the allegedly harassing conduct:

> (1) would not have occurred but for the employee's [race]; and [the conduct] was
> (2) severe or pervasive enough to make a
> (3) reasonable [Hispanic person] believe that
> (4) the conditions of employment are altered and the working environment is hostile or abusive.

*Taylor v. Metzger*, 152 N.J. 490, 498 (1998) (quoting *Lehmann v. Toys 'R' Us, Inc.*, 132 N.J.

587, 603-604 (1993)).  The "severe or pervasive" test "conforms to the standard for establishing

workplace racial or gender harassment under federal Title VII law." *Id.* at 498-99 (contrasting

the "severe or pervasive standard" with the "regular and pervasive" standard, which requires

repetitive or recurrent acts to establish workplace harassment).[12]  When assessing whether

conduct is severe or pervasive, courts must focus on the harassing conduct, and whether,

cumulatively, in the totality of the circumstances, a reasonable person would believe that the

terms of employment had changed and that the work environment was hostile.  *Cutler v. Dorn*,

196 N.J. 419, 431-32 (2008).

A hostile work environment claim cannot be based upon statements that are made outside

the presence of the plaintiff.  *Cutler*, 196 N.J. at 430-31.  Thus, "[t]o satisfy the severe-or-

---

[11]The statute provides, in pertinent part:
It shall be unlawful discrimination . . . [f]or an employer, because of the race . . . national origin . . .[or] age . . . of any individual . . . to refuse to hire or employ or to bar or to discharge or require to retire, unless justified by lawful considerations other than age, from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment[.]

[12]Even a single episode of invidious harassment can create a hostile work environment; however, "it will be a rare and extreme case in which a single incident will be so severe that it would, from the perspective of a reasonable person situated as the claimant, make the working environment hostile." *Id.* at 499-500 (quoting *Lehmann*, 132 N.J. at 606-607).

pervasive element . . . a plaintiff must marshal evidence of bad conduct of which he has firsthand knowledge." *Godfrey v. Princeton Theological Seminary*, 196 N.J. 178, 201 (2008) (holding that a plaintiff "may attempt to demonstrate the existence of a severe or pervasive hostile environment by presenting evidence of harassment by the perpetrator that was directed at others, and that the plaintiff witnessed," but that "gossip evidence" about alleged other acts of harassment is inadmissible to demonstrate a hostile work environment) (citing *Lehmann*, 132 N.J. at 611, and *Fitzgerald v. Stanley Roberts, Inc.*, 186 N.J. 286, 319 (2006)).

Defendants argue that, in this case, Plaintiff's allegations of incidents creating a hostile work environment do not involve race, at least as to those incidents that Plaintiff directly experienced.  For instance, Plaintiff admitted that no ethnic or racial slurs were used by Defendant Vitiello – one of Plaintiff's supervisors – when he poked Plaintiff in the chest and, to illustrate his disagreements with a former employee, stated that he could "pull out his heart with my bare hand."  (McGarvey Cert., Ex. B, Ventura Dep. at 42:6- 45:4.)  Instead, Plaintiff's race accusations rest on inadmissable "gossip evidence," since they stem from unverified comments that Plaintiff heard second-hand, from other employees.  *Id.* at 47:1- 61:23.  Specifically, though Plaintiff alleged that Mr. Vitiello had referred to him as a "dirty bastard," he qualified in his deposition that this comment was supposedly made to another coworker, and then conveyed to Plaintiff.  *Id.* at 53:1-13; 55:15- 56:2.  Similarly, it was in a meeting not attended by Plaintiff that Mr. Vitiello allegedly stated that the only thing Hispanics do well is "cleaning the toilet or [the] bathroom."  *Id.* at 59:11- 61:23.[13]  Again, Plaintiff asserts that Mr. Vitiello "picks his own guys" for promotions to the carpenter positions, but avers that it was because of a coworker's

---

[13]Plaintiff later averred that he heard Mr. Vitiello make a similar comment directly to him, but he could not remember where, when or what specifically was said.  *Id.* at 59-91.

statements that he believed Mr. Vitiello meant that he only chose white men for promotions. *Id.* at 112- 115:4.

Defendants further argue that Plaintiff's recitation of discourteous and rude treatment by various Defendants, most notably Mr. Vitiello, fails to satisfy the severe or pervasive test, because these things alone do not amount to harassment, citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (holding that the standards for judging workplace hostility are sufficiently demanding to ensure that Title VII does not become a "workplace civility code," and that they should filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing, and that hostile conduct must be extreme to amount to a change in the terms and conditions of employment) (internal citations omitted).  Although Plaintiff's coworkers, and particularly his supervisor, appear to have been very discourteous to him, their conduct does not amount to severe or pervasive invidious harassment.  To be sure, Plaintiff paints a picture of a supervisor who at times mocked him:  Mr. Vitiello regularly laughed at Plaintiff, and stated that he could not understand him because he "babbles" when he talks; Mr. Vitiello on one occasion mocked Plaintiff for avoiding him in the restroom; Mr. Vitiello made a comment to Plaintiff about not being "old like you" when stating that he had no grandchildren, and mocked Plaintiff's need to use glasses; Mr. Vitiello humiliated the Plaintiff by speaking rudely to him in front of a group of students.  (McGarvey Cert., Ex. B, Ventura Dep. at 130:19- 137.)  However, no reasonable fact-finder could conclude that these incidents are sufficiently extreme and hostile to constitute pervasive or severe invidious harassment.[14]  In other words, as to the incidents which occurred in

---

[14]To the extent that Plaintiff's affidavit, submitted in connection with his opposition to Defendants' summary judgment motion, contains statements which contradict or amend his prior deposition testimony regarding incidents of harassment, the Court has not considered same in

Plaintiff's presence, a reasonable Hispanic or older-aged person would not believe that the terms

of his employment had changed or that the work environment had become hostile.  Since

Plaintiff has not raised a genuine issue of material fact on his claim of severe or pervasive

discriminatory harassment, summary judgment must be granted in favor of Defendant MSU.

### F. Title VII and NJLAD Retaliation Claims

Plaintiff alleges that Defendant MSU retaliated against him for filing a grievance

complaint with MSU's human resources department on July 5, 2007.  (Pl.'s Br., Ex. F.)  He also

seeks to hold the individual Defendants accountable for retaliation under the NJLAD on an

aiding and abetting theory of liability.  *See* N.J.S.A. § 10:5-12(e).  Defendants seek summary

judgment on these claims because, they argue, Plaintiff did not engage in any protected activity

that was known to the Defendants.  Moreover, Defendants argue, Plaintiff did not suffer any

adverse employment actions, there is no nexus between the protected activity and the alleged

actions, and those actions have a legitimate, non-discriminatory basis.

This Court previously found that a reasonable finder of fact could conclude that

Plaintiff's filing a grievance with MSU constituted a protected action, and that there were factual

disputes precluding summary judgment; for example, the Court found that Plaintiff's contention

that he was forced to use a shopping cart in lieu of a car to transport tools across campus could be

considered adverse employment action.  However, the record in this matter having been further

developed, the Court concludes that Plaintiff cannot show a causal nexus between the protected

activity, and the alleged retaliatory conduct.  Therefore, Defendants are entitled to summary

---

reaching its opinion.  *See Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 253 (3d Cir. 2007).

judgment on Plaintiff's retaliation claims.

To establish a prima facie case of retaliation under Title VII, a plaintiff must show that (1) he engaged in protected activity, (2) the employer took a materially adverse action against him, and (3) there was a causal connection between the protected activity and the employer's action. *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 231 (3d Cir. 2007). Similarly, under the NJLAD, a plaintiff must show that (1) the employee engaged in a protected activity; (2) the employer took an adverse employment action after or contemporaneous with the employee's protected activity; and (3) a causal link exists between the employee's protected activity and the employer's adverse action. *Abramson v. William Paterson Coll.*, 260 F.3d 265, 286 (3d Cir. 2001). Under Third Circuit law, "the 'adverse employment action' element of a plaintiff's prima facie case under both NJLAD and Title VII incorporates the requirement that the retaliatory conduct rise to the level of a violation of 42 U.S.C. § 2000e-2(a)(1) or (2)." *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1300-1301 (3d Cir. 1997). Those statutory provisions state:

> (a) Employer practices. It shall be an unlawful employment practice for an employer--
>   (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
>   (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2.

Plaintiff's formal complaint to MSU's HR Department in July of 2007, addressed by Barbara Milton, and an informal complaint to Keesha Chavis in March of 2006 were the only complaints that he made to individuals at MSU. (McGarvey Cert., Ex. B, Ventura Dep. at 164:18-22.) Plaintiff alleges that, in retaliation to his complaint(s), Defendant Marzullo forced

him to use a shopping cart or public buses to transport his tools to jobs, instead of a car. *Id.* at 162:4- 164:3. Plaintiff has also alleged, in deposition testimony, that he was given arduous or unpleasant carpenter jobs by Defendant Fornarotto, in retaliation to his complaints. *Id.* at 184:13-187:11.

Defendants now argue that Plaintiff has failed to offer any evidence that Mr. Marzullo or Mr. Fornarotto were aware of Plaintiff's complaints. Ms. Milton, the Director of the Equal Opportunity, Affirmative Action, and Diversity in the MSU HR department, received Plaintiff's July 5, 1007 grievance from the EEOC. (McGarvey Cert., Ex. X.) She avers that, in order to prepare her responsive statement, the only individual at MSU with whom she spoke was Ms. Keesha Chavis. She never spoke with Mr. Vitiello, Mr. Marzullo, Walter Watkins, Dr. Timothy Carey, Walter Eddy, Theresa Geordino, Joseph Fornarotto, Evrin Aya, or Robert Caputo, the other named Defendants. However, Plaintiff asserts that his complaint to the HR Department was also forwarded to the Vice President the Plaintiff's Union, who spoke with Plaintiff regarding his complaint, and apparently liased with individuals at MSU regarding the grievance. *Id.* at 95:6 - 96:12. Plaintiff also claims that, following the grievance, he spoke with the Vice President about Defendant Vitiello holding work orders that had been assigned to Plaintiff on days that Plaintiff called in sick, though the orders could (and, according to Plaintiff, should) have been assigned to others. The Vice President told Plaintiff that she would speak with Mr. Vitiello personally about the issue. Thus, there is some evidence from which a fact-finder could infer that the Defendants – particularly, Mr. Vitiello, Plaintiff's supervisor – were aware of Plaintiff's complaints.

However, even if Defendants were aware of the complaints, and assuming that the retaliatory conduct alleged by Plaintiff constitutes materially adverse employment action,

Plaintiff has failed to show that the alleged retaliatory treatment was causally related to his grievance or his informal complaints to Ms. Davis. Plaintiff's allegations of retaliatory treatment include: (1) that he was forced to use a shopping cart to transport tools around campus; (2) that he was forced to take public transportation to certain jobs; (3) that he was given less desirable job assignments at times, including, on one instance, cleaning a toilet.[15] To establish a nexus between these events and the protected activity, temporal proximity alone will not suffice, unless the proximity is "unusually suggestive." *LeBoon v. Lancaster Jewish Comty. Ctr. Ass'n*, 503 F.3d 217, 232 (3d Cir. 2007). A gap of three months between the protected activity, and the retaliatory action(s), "without more, cannot create an inference of causation and defeat summary judgment." *Id.* at 233. Where there is not a suggestive temporal link, the plaintiff must offer some other evidence of causation, such as "intervening antagonism or retaliatory animus, inconsistences in the employer's articulated reasons for terminating the employee, or any other evidence in the record sufficient to support the inference of retaliatory animus." *Id.* at 232 (citing *Farrell v. Planters Livesavers Co.*, 206 F.3d 271, 279-81 (3d Cir. 2000)); *see also Woods-Pirozzi v. Nabisco Foods*, 290 N.J. Super. 252, 274-75 (N.J. Sup. Ct. App. Div. 1996) (to survive summary judgment on an NJLAD claim of retaliation, the plaintiff must create a genuine issue of material fact as to whether the protected activity was the actual cause of the retaliatory conduct). Here, Plaintiff offers no temporal link between the three retaliatory incidents listed above, and his complaint to MSU or to Ms. Chavis. Indeed, neither Plaintiff's Complaint, nor his deposition testimony, nor the affidavit in support of his opposition to Defendants' summary judgment

---

[15]Plaintiff also alleges that Mr. Vitiello "held" work orders that had previously been assigned to Plaintiff on days that he was out sick, rather than reassigning them to other employees, but when asked whether Plaintiff was ever disciplined as a result of work orders not being completed, Plaintiff stated: "No, never." (McGarvey Cert., Ex. B., Ventura Dep. at 157:6-9.)

motion (which, as noted above, appears to be a sham affidavit) sets forth even approximate dates on which the alleged retaliatory conduct occurred. (Compl. ¶ 16), (McGarvey Cert., Ex. B, Ventura Dep. at 162:20, 187:5-11.) Merely stating, in a conclusory fashion, that these events occurred "after" or "subsequent" to the filing of Plaintiff's complaint, or "two years ago," does not suffice. *Id.* Moreover, Plaintiff fails to offer any evidence that retaliatory animus motivated Mr. Marzullo or Mr. Fornarotto in their actions toward Plaintiff. Therefore, Plaintiff has not demonstrated a causal connection between the filing of his complaints, and the alleged adverse employment actions, nor has he created a genuine issue of material fact on this element. Therefore, the Court shall grant summary judgment in favor of the Defendants on Plaintiff's Title VII and NJLAD retaliation claims.

Finally, individuals may only be held liable under the NJLAD pursuant to an aiding or abetting theory. *Tarr v. Ciasulli*, 181 N.J. 70, 84 (2004). To make such a finding, the employer must first be found liable. *Id.* at 82-83. Because the Court finds that MSU cannot be held liable for violations of the NJLAD, Plaintiff has also failed to allege evidence of aiding or abetting by the individual named Defendants.

## III. CONCLUSION

For the foregoing reasons, Defendants are entitled to summary judgment on Plaintiff's Title VII, ADEA and NJLAD claims. However, Defendants are not entitled to summary judgment on Plaintiff's Section 1983 claim. An appropriate form of Order will be filed herewith.

        s/Stanley R. Chesler
        STANLEY R. CHESLER
        United States District Judge

Dated: December 19, 2011